**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, COLUMBUS, OHIO**

| | |
|---|---|
| **Austin J. Snyder**<br>5976 Breigha Drive<br>Galloway, Ohio 43119,<br><br>    Plaintiff,<br><br>v.<br><br>**Richard Stone & Associates**<br>2450 Louisiana Street, Ste. 400-528<br>Houston, Texas 77006<br><br>and<br><br>**Richard Stone**<br>2450 Louisiana Street, Ste. 400-528<br>Houston, Texas 77006<br><br>**Operation Restoration, LLC**<br>c/o Tim Moore<br>6969 Worthington-Galena Road, Ste L<br>Worthington, Ohio 43085,<br><br>    Defendants. | Case No:  **2:23-CV-1329**<br><br>Judge<br><br><br><br>**JURY DEMANDED HEREIN** |

**COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF**

The following allegations are based upon Plaintiffs Austin J. Snyder's ("Mr. Snyder" or "Plaintiff") personal knowledge, the investigation of counsel, and information and belief. Plaintiff, through counsel, alleges as follows:

I.    **INTRODUCTION**

1.    For almost two years, Mr. Snyder has been dealing with the fallout associated with water remediation services performed by Defendant Operation Restoration, LLC

1

("Operation Restoration") when the basement of his home flooded.  Operation Restoration was supposed to work with Mr. Snyder's insurance company to process the claim.  Instead, it refused to comply with the insurance company's requests for proper invoicing, made false representations to Mr. Snyder, and then improperly referred the account over to out-of-state debt collector Defendants Richard Stone and his company, Richard Stone & Associates (collectively "RSA").  RSA has engaged in a campaign of sending threatening and illegal communications, which can only be seen as an effort to harass and induce Mr. Snyder into paying for services that have already been paid. RSA has also improperly assessed thousands of dollars on the account for inexplicable services.  It is threatening to take all manner of legal actions it cannot take.  Mr. Snyder had no choice but to bring this lawsuit.

2.     Mr. Snyder brings this action for violations of the Fair Debt Collection Practices Act , 15 U.S.C. § 1692 et seq. as well as state claims for violations of the Ohio Consumer Sales Practices Act at R.C. 1345 et seq.

## II.     <u>JURISDICTION</u>

3.     This Court has subject matter jurisdiction for Count One pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

4.     This Court has subject matter jurisdiction for Count Two pursuant to 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over Defendants pursuant to Fed.R.Civ.P. 4(k).

6.     This Court has personal jurisdiction over Defendant(s) because they conduct substantial business in this District and this lawsuit arises out of acts that occurred in this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

7. Venue is proper in accordance with 28 U.S.C. 1391(b)(2), as a substantial part of the events leading to this lawsuit arose out of acts which occurred in this District.

III. **PARTIES**

8. Plaintiff is a natural person currently residing within this Court's jurisdiction at 5976 Breigha Drive, Galloway, Ohio 43119.

9. At all relevant times, Plaintiff was and is a "consumer" within the meaning of the FDCPA at 15 U.S.C. § 1692a(3).

10. Plaintiff is and was a **Consumer** under the meaning of R.C. § 1345.01(D) at all times relevant to this transaction.

11. At all relevant times, Defendant Richard Stone & Associates was a business organized under the laws of the United States with its principal place of business in Texas.

12. At all relevant times, Defendant Richard Stone & Associates was and is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6).

13. Defendant Richard Stone & Associates regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

14. Defendant Richard Stone & Associates acquired its rights, if any, after the account was allegedly in default.

15. Defendant Richard Stone & Associates is and was a **Supplier** under the meaning of R.C. § 1345.01(C) at all times relevant to this transaction.

16. Defendant Richard Stone is an individual residing in the state of Texas.

17. At all relevant times, Defendant Richard Stone was the owner and/or principal of Defendant Richard Stone & Associates.

18. At all times relevant, Defendant Richard Stone exercised such complete control over Defendant Richard Stone & Associates that it has no separate mind, will, or existence of its own.

19. At all times relevant, Defendant Richard Stone grossly undercapitalized and underfunded Defendant Richard Stone & Associates.

20. At all times relevant, Defendant Richard Stone intermingled his funds and accounts with the funds and accounts of Defendant Richard Stone & Associates, and vice versa.

21. Defendant Richard Stone used funds intended for Defendant Richard Stone & Associates for personal use instead of the company's intended business purposes.

22. Defendant Richard Stone exercised his control over Defendant Richard Stone & Associates to oversee or personally commit the unlawful and fraudulent acts alleged in this Complaint.

23. Defendant Richard Stone is and was the alter ego of Defendant Richard Stone & Associates such that Plaintiff is entitled to pierce the corporate veil.

24. At all relevant times, Operation Restoration was a limited liability company organized under the laws of Ohio with its principal place of business in Franklin County, Ohio.

25. Operation Restoration is and was a **Supplier** under the meaning of R.C. § 1345.01(C) at all times relevant to this transaction.

26. Plaintiff's transaction with Operation Restoration is and was a **Consumer Transaction** under the meaning of R.C. § 1345.01(A) at all times relevant to this transaction.

27. **FACTUAL ALLEGATIONS**

10. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

11.   Each action or inaction alleged against Defendants is also an allegation of action or inaction by Defendants' agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

12.   At all relevant times, Mr. Snyder's principal residence has been 5967 Breigha Drive, Galloway, Ohio 43119 (the "Home").

13.   In or around September 2021, the sump pump in Mr. Snyder's home failed resulting in water infiltration into the basement of the Home.

14.   On or about September 22, 2021, Mr. Snyder contacted Operation Restoration to perform water remediation services.

15.   On or about September 23, 2021, Operation Restoration provided Mr. Snyder with a contract for water remediation services (the "Contract"). Attached as Exhibit A is a true and accurate copy of the Contract.

16.   The Contract was for personal, family, or household services.

17.   The Contract improperly provided Operation Restoration could recover attorney fees for a breach of a consumer contract.

18.   The Contract improperly provided a punitive liquidated damages clause.

19.   The Contract appointed Operation Restoration as Mr. Snyder's "assigned company for insurance benefits, privacy rights, policies, and questions associated with the claim."

20.   The Contract further authorized Mr. Snynder's insurance carrier to pay Operation Restoration directly for services related to the claim.

21.   On or about September 23, 2023, Mr. Snyder submitted a claim to his insurance company for the water remediation services.

22. Operations Restoration submitted a request to Mr. Snyder's insurance carrier for direct payment for its services in excess of $7,000.00.

23. Operation Restoration refused to use the correct price list and remove invalidated charges on its request for payment to Mr. Snyder's insurance carrier.

24. Mr. Snyder's insurance carrier approved payment of a revised estimate in the amount of $3,498.79.

25. In response, on or about November 5, 2021, Operation Restoration agreed to revise its estimate to $5,443.37.

26. Ms. Snyder's insurance carrier sent Operation Restoration payment in the amount of $3,498.79.

27. Operation Restoration accepted this payment.

28. On or about November 16, 2021, Operation Restoration emailed Mr. Snyder.

29. In the email, Operation Restoration requested assistance from Mr. Snyder to work with his insurance carrier to get Operation Restoration's bill paid.

30. Mr. Snyder contacted his insurance carrier on several occasions regarding the payment of the claim to Operation Restoration.

31. On or about December 8, 2021, Mr. Snyder informed Operation Restoration that his insurance carrier paid a lower amount on the claim due to Operation Restoration's refusal to use the correct price list and remove invalidated charges.

32. In response, Operations Restoration emailed Mr. Snyder informing him that it would "negotiate the documented items I feel should be paid and we'll see where we land."

33. Operations Restoration continued to attempt to negotiate with Mr. Snyder's insurance carrier for payment of the claim.

34. On or about January 14, 2022, Operations Restoration sent Mr. Snyder an email.

35. In the email Operations Restoration stated it "went ahead and sent the disputed amount of $1,944.58 to [its] collections attorney so they can go after the insurance company, they'll handle it from here. No need to do anything."

36. Operation Restoration never sent an invoice to Mr. Snyder for any outstanding balance.

37. Operation Restoration improperly referred the alleged outstanding amount to RSA for collection against Mr. Snyder.

38. On or about January 25, 2023, RSA sent Mr. Snyder a letter titled "Letter of Representation" (the "Collection Letter"). Exhibit B is a true and accurate copy of the Collection Letter.

39. The Collection Letter was signed by Defendant Richard Stone as Managing Partner.

40. Defendant Richard Stone is not a licensed attorney in Texas.

41. RSA does not directly employ any attorneys.

42. The Collection Letter stated Mr. Snyder owed a "Total Amount due [of] $12,077.84 for a full general release of any legal liability."

43. The collection letter stated Mr. Snyder owed $7,614.17 for services provided by Operation Restorations.

44. The Collection Letter stated Mr. Snyder owed $4,463.67 for "Contractual Arbitration/Investigations/Interest/Administration."

45. The Collection Letter did not provide further itemization of the $4,463.67.

46. The Collection Letter threatened to take legal action.

47. On or about February 23, 2023, Mr. Snyder sent RSA a debt validation letter ("Debt Validation Letter").

48. In the Debt Validation Letter, Mr. Snyder instructed RSA to cease all communications directly with him.

49. In the Debt Validation Letter, Mr. Snyder instructed RSA to validate the debt and disputed the alleged amount due.

50. On or about February 27, 2023, RSA sent Mr. Snyder a text message.

51. The text message stated "Contact Richard Stone & Associates today regarding a pending matter in Franklin County before any legal filings." Exhibit C is a true and accurate copy of the text message.

52. On or about February 28, 2023, a second letter titled "Letter or Representation" ("Second Debt Collection Letter.") Exhibit D is a true and accurate copy of the Second Debt Collection Letter.

53. The Second Debt Collection Letter contained the same information as the First Debt Collection Letter.

54. The Second Collection Letter threated to "file a petition to Franklin County for a "Notice of Lien" on the property listed above and or legal filing for the remaining balance on the claim plus treble damages, pending the outcome of the investigation. Also not limited to submitting misappropriation of funds to the State of OH. And/or not limited to all three credit bureau reporting [sic]."

55. To date, RSA has not responded to the Debt Validation Letter.

56. As a direct and proximate result of Defendants' actions, Mr. Snyder suffered emotional distress, including but not limited to sleepless nights, excessive stress, and anxiety.

57. As a direct and proximate result of Defendants' actions, Mr. Snyder has incurred actual damages, including but not limited to improperly charged fees, costs and interest against the account.

58. As a direct and proximate result of Defendants' actions, Mr. Snyder incurred costs to retain an attorney to send the Debt Validation Letter.

## IV. COUNT ONE – FDCPA – RSA

59. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

60. At all relevant times, RSA was and is subject to the FDCPA, 15 U.S.C. § 1692a, *et seq*.

61. At all times relevant, the Account was and is a purported obligation of a consumer to pay money arising out of a consumer transaction in which the subject of the transaction is and was primarily for personal, family, or household purposes.

62. RSA's actions defined herein constitute violations of the FDCPA, 15 U.S.C. § 1692a, *et seq*.

63. RSA's actions constitute false, deceptive, or misleading representations in connection with the collection of a debt in violation of 15 U.S.C. 1692e, including but not limited to:

   a. Falsely representing its ability to collection on the alleged debt in violation of the FDCPA, 15 U.S.C. § 1692e(5);

   b. Falsely representing the legal status, character, or amount of the debt in violation of the FDCPA, 15 U.S.C. § 1692e(2)(A);

    c.  Falsely representing that services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of the FDCPA, 15 U.S.C. § 1692e(2)(B);

    d.  Falsely representing or implying that RSA is an attorney or that its communications are from an attorney in violation of the FDCPA, 15 U.S.C. § 1692e(3); and

    e.  Falsely communicating or threating to communicate any person's credit information which is known or which should be known to be false in violation of the FDCPA, 15 U.S.C. § 1692e(8).

64.  RSA's actions constitute unfair or unconscionable means in connection with the collection of the debt in violation of 15 U.S.C. § 1692f, including but not limited to:

    a.  Attempting to collect interest, fees, charges, and expenses that are not expressly authorized by the Contract.

65.  RSA's action constitute improper communications in connection with a debt in violation of 15 U.S.C. § 1692c, including but not limited to:

    a.  Contacting Mr. Snyder via text message; and

    b.  Continuing to communicate directly with Mr. Snyder despite him being represented by an attorney.

66.  As a result of RSA's actions and communications in connection with the collection of a debt, Mr. Snyder suffered emotional distress, including but not limited to sleepless nights, excessive stress, and anxiety.

67.  As a further result of RSA's actions and communications in connection with the collection of a debt, Mr. Snyder incurred actual damages, including but not limited to

the costs associated with responding to RSA's false and misleading communications as well as all improperly assessed fees, charges, and costs assessed against the Account.

68.  RSA is liable to Mr. Snyder for damages, including but not limited to, his actual damages, including pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount of at least $1,000.00, including pursuant to 15 U.S.C. § 1692k(a)(2)(A), the cost of this action and attorney fees, including pursuant to 15 U.S.C. § 1692k(a)(3), and other relief as this Court deems just and necessary.

69.  Mr. Snyder is entitled to injunctive relief prohibiting RSA from making any further efforts to collect on the account or making false reports to any credit reporting agency.

## V.  <u>COUNT TWO – CSPA – RSA</u>

70.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

71.  RSA was and is subject to Ohio's Consumer Sales Practices Act, O.R.C. § 1345.01, *et seq.* ("CSPA") at all times relevant to this transaction.

72.  RSA's actions described in this Complaint are unfair, deceptive, and unconscionable acts and practices in violation of Ohio's Consumer Sales Practices Act, R.C. § 1345.01, *et seq.* ("CSPA") including at R.C. § 1345.02 and R.C. 1345.03.

73.   In connection with said transaction, RSA committed acts and practices that have been determined by the courts of this state to violate R.C.  § 1345.02 or 1345.03. Said acts and practices were committed after such decisions were made available for public inspection under R.C. § 1345.05(A)(3) and include, but are not limited to the following:

a.  RSA's violations of the FDCPA constitute violations of the CSPA; *Richard Thomas v. Jel Home Improvement Co., Inc.,* PIF 10001443; *State ex rel Dewine v. Nationwide Recovery Group, LLC,* PIF 3442.

b.  RSA attempted to collect improper attorney fee provision in the Contract; *Paul Harris Ins. Restoration Grp., Inc. v. Brown;* PIF 3346.

c.  RSA improperly pursued collections on invalid provision in the Contract, *Paul Harris Ins. Restoration Grp., Inc. v. Brown;* PIF 3346 ;

d.  RSA improperly misrepresented services provided in connection with the collection of a debt, *Paul Harris Ins. Restoration Grp., Inc. v. Brown;* PIF 3346;

e.  *State ex rel. De Wine v. The Pool Man, Inc.,* PIF 10003073;

74.  RSA knowingly committed unfair, deceptive, and unconscionable acts and practices.

75.  As a result of RSA's unfair, deceptive, and unconscionable acts and practices, the Mr. Snyder has been damaged when the damages are trebled in an amount exceeding Twenty-Five Thousand Dollars ($25,000.00).

76.  As a result of RSA's unfair, deceptive, and unconscionable acts and practices, the Mr. Snyder suffered undue stress, anxiety, and embarrassment.

77.  RSA is also liable to Mr. Snyder for an amount to be determined in emotional distress including pursuant to R.C. § 1345.09(A) and (B), attorney fees, and costs of this action.

78.  Mr. Snyder is entitled to three times the amount of his damages including pursuant to R.C. § 1345.09(B) from RSA.

**VI.     COUNT THREE – CSPA – OPERATION RESTORATION**

79.  Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

80. Operation Restoration was and is subject to Ohio's Consumer Sales Practices Act, O.R.C. § 1345.01, *et seq.* ("CSPA") at all times relevant to this transaction.

81. Operation Restoration's actions described in this Complaint are unfair, deceptive, and unconscionable acts and practices in violation of Ohio's Consumer Sales Practices Act, R.C. § 1345.01, *et seq.* ("CSPA") including at R.C. § 1345.02 and R.C. 1345.03.

82.  In connection with said transaction, Operation Restoration committed acts and practices that have been determined by the courts of this state to violate R.C.  § 1345.02 or 1345.03. Said acts and practices were committed after such decisions were made available for public inspection under R.C. § 1345.05(A)(3) and include, but are not limited to the following:

   a. Operation Restoration failed to perform services in a competent, satisfactory, and workmanlike manner and then failed or refused to correct the substantial work or defect. *Maimend v. Day*, Case No. 89-2411 (PIF No. 1095); *Celebrezze v. Goldstein Amer Builder & Supply Co.*, Case No. 53110 [1983 WL 197499] (PIF No. 3916).

   b. Operation Restoration included an improperly punitive liquidated damages clause in the Contract.  *State ex rel. Montgomery v. USA Cable Company, Inc.,* PIF 10002058;

   c. Operations Restoration included an in proper attorney fee provision in the Contract; *Paul Harris Ins. Restoration Grp., Inc. v. Brown;* PIF 3346.

   d. Operations improperly pursued collections on invalid provision in the Contract, *Paul Harris Ins. Restoration Grp., Inc. v. Brown;* PIF 3346 ;

   e. *State ex rel. De Wine v. The Pool Man, Inc.,* PIF 10003073;

      f.    Failing to perform as promised. *In re Allwood Structures; Durabilt Inc.;*

          *Tiberline Post and Beam Structures Company*, PIF 10002305.

83. Operation Restoration's actions described herein are unfair or deceptive acts and unconscionable practices in violation of Ohio's Consumer Sales Practices Act, R.C. § 1345.01, *et seq.* ("CSPA") including at R.C. § 1345.09(B) and R.C. 1345.05(B)(2) pursuant to rules adopted by the attorney general in the Ohio Administrative Code at:

      a.    Ohio Adm.Code 109:4-3-05

84. Operation Restoration knowingly committed unfair, deceptive, and unconscionable acts and practices.

85. As a result of Operation Restoration's unfair, deceptive, and unconscionable acts and practices, the Mr. Snyder has been damaged when the damages are trebled in an amount exceeding Twenty-Five Thousand Dollars ($25,000.00).

86. As a result of Operation Restoration's unfair, deceptive, and unconscionable acts and practices, the Mr. Snyder suffered undue stress, anxiety, and embarrassment.

87. Operation Restoration is also liable to Mr. Snyder for an amount to be determined in emotional distress including pursuant to R.C. § 1345.09(A) and (B), attorney fees, and costs of this action.

88. Mr. Snyder is entitled to three times the amount of his damages including pursuant to R.C. § 1345.09(B) from Operation Restoration.

## VI.    __PRAYER FOR RELIEF__

**WHEREFORE**, Plaintiff respectfully prays that this Court:

    A.  Assume jurisdiction of this case;

B. Award Plaintiff her maximum all Counts, including the maximum statutory damages available, the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

C. Award Plaintiff actual damages to be established at trial, including pursuant to 15 U.S.C. § 1692k(a)(1).

D. Award Plaintiff statutory damages in the amount of up to at least $1,000.00, including pursuant to 15 U.S.C. § 1692k(a)(2)(A);

E. Award Plaintiff attorney fees and costs of this action including pursuant to 15 U.S.C. § 1692k(a)(3);

F. Issue a judicial determination of the rights and responsibilities of the parties;

G. Issue an order directing Defendants to cease all collection efforts on the Account;

H. Enter an order permanently enjoining Defendants to stop negatively reporting the Account to any credit reporting agency;

I.  Award Plaintiff damages in an amount exceeding $25,000.00 trebled including pursuant to R.C. 1345.09, costs and reasonable attorney fees including pursuant to R.C. 1345.09(F)(2);

J. Award such other relief as the Court deems appropriate.

Dated: April 14, 2023.

Respectfully Submitted,
KOHL & COOK LAW FIRM, LLC

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)
Sean Kohl (0086726)
1900 Bethel Road
Columbus, Ohio 43220
PH (614) 763-5111
FAX (937) 813-6057
andrew@kohlcook.com
sean@kohlcook.com
Attorneys for Plaintiff

## JURY TRIAL DEMANDED

Plaintiffs respectfully request a jury trial on all triable issues.

*/s/ Andrew J. Gerling*
Andrew J. Gerling (0087605)